UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


ADRIAN D. DOUGLAS

                                  CIVIL ACTION

VERSUS

                                  NUMBER 11-126-SCR

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION


## RULING ON SOCIAL SECURITY APPEAL

Plaintiff Adrian D. Douglas brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability and supplemental security income ("SSI") benefits.

For the reasons which follow the Commissioner's decision is affirmed.

### Standard of Review

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the relevant legal standards.[1] *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001). If

---

[1] It is well-established that in cases brought under § 405(g) evidence outside the administrative record is generally inadmissible, and on judicial review the court cannot consider any evidence that is not already a part of the administrative record. *Lovett v. Schweiker*, 667 F.2d 1, 2 (5th Cir. 1981); *Flores v.*
(continued...)

substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 1422 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). In applying the substantial evidence standard the court must review the entire record as whole, but may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence are for the Commissioner and not the court to resolve. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

If the Commissioner fails to apply the correct legal standards or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for

---

[1](...continued)
*Heckler*, 755 F.2d 401, 403 (5th Cir. 1985).

Case 3:11-cv-00126-SCR   Document 18    01/29/13   Page 2 of 20

reversal.  *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981);
*Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

A claimant has the burden of proving that he or she suffers
from a disability, which is defined as a medically determinable
physical or mental impairment lasting at least twelve months that
prevents the claimant from engaging in substantial gainful
activity.  20 C.F.R. § 404.1505 and § 416.905.  The regulations
require the ALJ to apply a five step sequential evaluation to each
claim for disability benefits.  20 C.F.R. § 404.1520 and § 416.920.
In the five step sequence used to evaluate claims, the Commissioner
must determine whether: (1) the claimant is currently engaged in
substantial gainful activity, (2) the claimant has a severe
impairment(s), (3) the impairment(s) meets or equals the severity
of a listed impairment in Appendix 1 of the regulations, (4) the
impairment(s) prevents the claimant from performing past relevant
work, and (5) the impairment(s) prevents the claimant from doing
any other work.  *Masterson*, 309 F.3d at 271.

The burden of proving disability rests on the claimant through
the first four steps.  If the claimant shows at step four that he
is no longer capable of performing his past relevant work, the
burden shifts to the Commissioner to show that the claimant is able
to engage in some type of alternative work that exists in the
national economy.  *Myers*, *supra*.  If the Commissioner meets this
burden the claimant must then show that he cannot in fact perform

3

that work.  *Boyd*, 239 F.3d at 705.

In 1996 Congress amended the Social Security laws related to alcoholism and drug addiction.  The effective date of the amendments was March 29, 1996.  *Brown v. Apfel*, 192 F.3d 492 (5th Cir. 1999); *Adams v. Apfel*, 149 F.3d 844, 846 (8th Cir. 1998). Under the legislation and implementing regulations, alcohol or drug addiction might preclude a finding of disability.  42 U.S.C. §§ 423(d)(2)(c) and 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535(a) and 416.935(a); *Brown*, 149 F.3d at 497-499.   The regulations mandate consideration of whether these addictions are contributing factors material to the determination of disability only after the administrative law judge ("ALJ") finds the claimant is disabled. *Id.*  The key factor is whether the claimant would still be found disabled if he stopped using drugs or alcohol.[2]  The claimant has the burden of proving that drug or alcohol addiction is not a contributing factor material to his disability.  *Brown*, 149 F.3d at 498; *Wheat v. Barnhart*, 318 F.Supp.2d 358, 362 (M.D. La. 2004).[3]

_____

[2] *Brown,* 192 F.3d at 499; 20 C.F.R. §§ 404.1535(b)(1)-(2)(i) & (ii) and 416.935(b)(1)-(2)(i) & (ii).

[3] The Social Security Administration has also issued internal guidelines on the process for evaluating a claimant's drug or alcohol abuse:
>    (1) does the claimant meet the disability standard? (2) is there medical evidence of drug addiction or alcoholism? and (3) is the claimant's substance use or addiction disorder "material" to the disability determination?  Consistent with the *Brown* decision and the federal regulations, this three-step evaluation
>                                                 (continued...)

4

## Background

Plaintiff had a high school education and at the time he filed this appeal was 36 years of age. AR pp. 54, 83, 790, 829-30. Plaintiff's job history from 1992 to 2001 consisted of work for approximately 14 different employers performing jobs such as fork lift operator, cook, waiter, stocker, lawn care worker and laborer. AR pp. 78, 84, 86, 93. The subject of this appeal is the plaintiff's applications for disability and SSI benefits filed in January and March of 2003. Plaintiff claimed that he has been disabled and unable to engage in substantial gainful activity since January 2001, and that his disability is a result of severe mental problems. AR pp. 54-56, 77, 790-93, 836-37.

Plaintiff's applications were denied. Plaintiff has exhausted his administrative remedies. The Commissioner issued two final decisions denying the plaintiff's claims for disability and SSI benefits, and the plaintiff appealed both decisions. Plaintiff's appeal of the first ALJ decision resulted in a reversal and remand

---

[3](...continued)
process provides that a finding of disability must first be reached. If there is medical evidence in the record of drug or alcohol use, the ALJ must then determine if the use contributes to the disability. If it does contribute, the plaintiff is not entitled to these benefits, even though he is otherwise disabled. If drug or alcohol use is not contributory, then the plaintiff remains entitled to these benefits because he is otherwise disabled.

*Oettinger v. Barnhart*, 2002 WL 31422308 (W.D. Tex., Sept. 4,2002).

to the Commissioner for reevaluation of his claims and issuance of a new decision.  After the proceedings on remand, he ALJ and Appeals Council issued another unfavorable decision.  Plaintiff now appeals this final decision.  The background of each appeal is as follows.

### Background and Outcome of First Appeal

The first ALJ hearing was held on January 6, 2005.  AR pp. 827-49.  After the hearing the ALJ issued a decision on April 7, 2005.  AR pp. 14-28.  The ALJ concluded at step two that the plaintiff suffered from a severe combination of impairments:[4] "The claimant has bipolar disorder with psychotic features: dependent personality disorder; anti-social personality disorder, a history of drug and alcohol abuse, a history of noncompliance with his psychotropic medications, and headaches and dizziness."  AR p. 26. At step three the ALJ determined that the plaintiff's impairments met the criteria of Listing 12.09B.

This listing was satisfied by reference to Listing 12.04 which covers affective disorders that are characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.[5]  The ALJ stated that of the eight characteristics the

---

[4] *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985).

[5] Listing 12.09 is not analyzed separately from Listings 12.04 and 12.08 because it is structured as a reference listing.  Unlike other sections of disorders in the list of impairments, § 12.09 (continued...)

6

plaintiff had at least four, including pressures of speech, flight

of ideas, inflated self-esteem, involvement in activities that have

a high probability of painful consequences which are not

recognized, and hallucinations, delusions or paranoid thinking.[6]

Under Listing 12.04B. the plaintiff also had the required listing

level severity in two areas - marked difficulties in maintaining

social functioning and in maintaining concentration, persistence or

pace.  AR p. 21.

Because the plaintiff was disabled under the Listings at step

three and there was medical evidence of drug addiction,[7] the ALJ

was required to determine whether the plaintiff's substance abuse

was material to the disability determination.  The ALJ addressed

the issue and concluded that the plaintiff's drug abuse was a

material factor contributing to the finding that he was disabled at

the third step.  AR p. 22.  Therefore, the plaintiff was not

entitled to benefits, that is, the plaintiff would not be disabled

---

[5](...continued)
does not have its own set of requirements.  *Pettit v. Apfel*, 218
F.3d 901, 902 (8th Cir. 2000).  It only serves to indicate which of
the other listed mental or physical impairments must be used to
evaluate the behavioral or physical changes resulting from regular
use of addictive substances.  20 C.F.R. Pt. 404, Subpt. P, App. 1,
Pt. A, § 12.00A. *Introduction*. *Mendez v. Barnhart*, 2007 WL 186800,
*8 (S.D. N.Y. Jan. 3, 2007).

[6] Listing 12.04A.2.

[7] The administrative record is replete with evidence of the
plaintiff's alcohol and drug abuse.  It is unnecessary to summarize
the evidence in this ruling.

Case 3:11-cv-00126-SCR   Document 18   01/29/13   Page 7 of 20

under the Listings if he stopped his drug and alcohol abuse.

Based on this finding, the ALJ proceeded to make the findings necessary to evaluate the plaintiff's impairments under the remaining steps of the disability analysis. The ALJ evaluated the plaintiff's residual functional capacity in order to assess whether the plaintiff was able to do any of his past relevant work, or make an adjustment to other work that exists in the national economy. AR pp. 25, 27.

The ALJ reviewed the plaintiff's past employment history and at step four concluded that the plaintiff's residual functional capacity prevented him from performing any of his past relevant work. At the final step of the disability analysis the ALJ concluded that:

> Although the claimant's exertional and non-exertional limitations do not allow him to perform the full range of sedentary work, using Medical-Vocational Rule 201.28 as a framework for decision-making, the undersigned Administrative Law Judge finds that but for his continued drug and alcohol abuse, there are a significant number of jobs in the national economy that the claimant could perform.

> AR p. 27, finding number 15.

The ALJ denied the plaintiff's claim for disability and SSI benefits. Plaintiff appealed the ALJ's decision to the Appeals Council. The Appeals Council denied the plaintiff's request for review on January 18, 2006. AR pp. 5-10. Plaintiff filed a

petition for judicial review in this court.[8]  Ultimately the
district judge issued a ruling and judgment approving a report and
recommendation that resulted in a reversal and remand to the
Commissioner.  The Commissioner's decision was reversed because of
errors at the fifth step.  The ALJ failed to obtain needed
vocational evidence and also failed to consider the plaintiff's
ability to do other work in light of the principles of *Singletary
v. Bowen*.[9]

**Background of Second Appeal**

Based on the court's order of remand, the Appeals Council
issued a notice/order sending the case to an ALJ to conduct further
proceedings consistent with the court's order.[10]  Another
administrative hearing was held on November 17, 2008 and additional
evidence was admitted into the record.[11]  This evidence and
testimony from the administrative hearing showed that the plaintiff
was incarcerated from June 2, 2006 to April 18, 2008 for a parole
violation.  AR pp. 943-46, 948, 996-97.  Records associated with
this period of incarceration indicated that the plaintiff received

---

[8] Civil Action No. 06-210-JJB-SCR; AR pp. 880-905 (copies of
the report and recommendation and district court ruling included in
the administrative record).

[9] 798 F.2d 818, 822 (5th Cir. 1986); *Leidler v. Sullivan*, 885
F.2d 291, 292-93 (5th Cir. 1989).

[10] The case was remanded to a different ALJ.

[11] AR pp. 971-1018; 935-61.

mental health treatment during this time and was taking prescribed medication.[12]  AR pp. 935-46, 987.  According to the progress notes, the plaintiff consistently denied having any hallucinations, and there were no reported problems with his mood.  Plaintiff stated that he was looking forward to getting discharged, wanted to get a job and planned to stay with his father.  AR p. 940.

In the time period between the plaintiff's discharge from prison on April 18, 2008 and the ALJ hearing held on November 17, 2008, the plaintiff underwent a consultative examination by a psychologist.[13]  A letter and the hearing testimony showed that after his release from prison the plaintiff was receiving treatment/medication from the mental health center.  AR pp. 959, 984-85.[14]  Another letter from a physician's clinic dated August 4, 2008 showed that the plaintiff was a patient at the clinic.  The physician, Dr. Chaillie P. Daniel, concluded from one examination that "[i]n my opinion Mr. Douglas is not competent to handle his own financial matters."  AR 958.  Plaintiff also reported during this time period that he had high blood pressure and sleep apnea, and was diagnosed with diabetes in May 2008.  AR pp. 948, 980, 986.

---

[12] Plaintiff's medications were Haldol and Benadryl.  AR p. 935.

[13] AR pp. 947-51.

[14] The letter merely contained a conclusory statement that the plaintiff was a client at the clinic starting on April 22, 2008, and that "[h]e is currently being stabilized on medication and is unable to work."  AR p. 961.

At the hearing the plaintiff testified that his weight was 320 pounds. AR p. 982.

At the hearing the ALJ also took testimony from the plaintiff's father, vocational expert Thomas Mungall, III, and medical expert, Dr. Thomas C. Fain, a clinical forensic and medical psychologist. The ALJ issued an unfavorable decision on June 12, 2009. AR pp. 866-77. At step two of the disability analysis the ALJ found that the plaintiff had a severe combination of mental impairments - psychosis, not otherwise specified, bipolar disorder associated with substance abuse, and a history of alcohol and substance dependence. AR p. 869. At the third step the ALJ again concluded that the plaintiff's impairments met the criteria of Listing 12.09B by reference to Listing 12.04, but then found that if the plaintiff stopped the substance abuse his impairments would not meet or medically equal a listed impairment. AR pp. 870-71. Furthermore, if the plaintiff stopped abusing drugs and alcohol, he could perform all the exertional requirements of work, but would still have nonexertional limitations as a result of his severe mental impairments. AR p. 872.

Given his residual functional capacity, and the plaintiff's age and educational level, the ALJ relied on the testimony of the vocational expert at the fifth step. Mungall testified that given all of these factors, there were several jobs existing in significant numbers in the national and local economy that the

11

plaintiff would be able to do - dishwasher, cleaner, grounds maintenance worker and food preparation worker. AR p. 876. The ALJ concluded his decision by stating:

> 13. Because the claimant would not be disabled if he stopped the substance use (20 CFR404.1520(g) and 416.920(g)), the claimant's substance use disorders is a contributing factor material to the determination of disability (20 CFR 404.1535 and 416.935). Thus, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

AR p. 876.

After the ALJ's decision the Appeals Council assumed jurisdiction because the ALJ did not address *Singletary v. Bowen*. The Appeals Council considered the *Singletary* decision, but concluded as the ALJ did that substance abuse was a contributing factor material to the plaintiff's disability.[15] Consequently, without substance abuse, and given the plaintiff's residual functional capacity, age and education, he could perform other work as identified by the vocational expert. This resulted in a finding that the plaintiff was not disabled at the fifth step. AR pp. 854-55.

## Analysis

After the Appeals Council issued its decision on January 8, 2011, the plaintiff filed this petition for judicial review.

---

[15] Other than addressing *Singletary*, the Appeals Council adopted the ALJ's remaining findings and conclusions. AR pp. 853-56.

12

Plaintiff raised the following errors: (1) the Appeals Council's *Singletary* analysis was inadequate and the finding was not supported by substantial evidence; (2) the vocational evidence did not support the finding that the plaintiff could do other work in the national economy because the hypothetical presented to the vocational expert did not adequately reflect the plaintiff's impairments; (3) the ALJ failed to consider the impact of obesity on the plaintiff's ability to work; and, (4) the finding that the plaintiff's drug and alcohol abuse was a contributing factor material to his disability was not based on substantial evidence. Careful review of the administrative record as a whole demonstrates that the claims of reversible error urged by the plaintiff are without merit, and that substantial evidence supports the final decision of the Commissioner.

## 1.    The ALJ properly considered the impact of obesity on the plaintiff's ability to work.

   Plaintiff pointed to the evidence of his height and weight that he provided at the hearing and the Social Security Ruling which provides guidance on considering obesity.[16] Plaintiff argued that given his weight and height he is considered extremely obese, and the ALJ failed to assess the effects of this condition on his

_____

   [16] Plaintiff testified that his height was 5 feet 7 inches and he weighed 320 pounds.  AR p. 982.  Plaintiff asserted that this gives him a BMI of 50 and places him in the category of "extremely obese."  Record document number 13, Memorandum in Support of Appeal, p. 10.

Case 3:11-cv-00126-SCR   Document 18   01/29/13   Page 13 of 20

ability to work and sustain work-related activities.[17]

Contrary to the plaintiff's argument, the ALJ specifically addressed the obesity impairment, but found that it was not severe under the correct legal standard - *Stone v. Heckler.*[18] Furthermore, this finding was supported by substantial evidence. Although the plaintiff had an obesity impairment, the record did not contain medical or other objective findings which showed the impairment caused any limitations of function such as those described in SSR 02-1p.[19] Nor did the plaintiff testify that the obesity caused any

---

[17] Effective October 25, 1999, obesity was deleted as a listed impairment. *Weary v. Astrue*, 288 Fed.Appx. 961 (5th Cir. 2008); *Wooten v. Apfel*, 108 F.Supp.2d 921, 924 (E.D.Tenn. 2000); *Allen v. Apfel*, 2001 WL 253120 (E.D.La., Mar. 14, 2001). However, the Social Security regulations require that obesity and its effects be considered in determining whether a claimant meets the listings related to the musculoskeletal, respiratory and cardiovascular systems, and considered in combination with other impairments throughout the sequential disability analysis. *See*, Listing 1.00.Q.; Listing 3.00.I.; Listing 4.00.F; SSR 02-01p, Evaluation of Obesity, 2000 WL 628049 (S.S.A. Sept. 12, 2002).

[18] 752 F.2d 1099 (5th Cir. 1985). Evidence of the existence of an impairment does not establish that it is a severe impairment under the regulations. Severity is a separate determination. See, 20 C.F.R. §§ 404.1520(a)(4)(ii) and 404.1521; 20 C.F.R. §§ 416.920(a)(4)(ii) and 416.921.

[19] Under SSR 02-1p the impact of obesity on an individual's functioning must be considered in determining the severity of the obesity and to what extent, if any, it affects the individual's residual functional capacity. SSR 02-01p specifically states:
> There is no specific level of weight or BMI that equates with a "severe" or a "not severe" impairment. Neither do descriptive terms for levels of obesity (e.g., "severe," "extreme," or "morbid" obesity) establish whether obesity is or is not a "severe" impairment for disability program purposes.

14

exertional or nonexertional limitations in his functioning.[20]  In
the absence of evidence that this condition resulted in
restrictions/limitations in the plaintiff's ability to perform
work-related activities, it was not error for the ALJ to conclude
that this impairment was not severe and did not have an effect on
the plaintiff's residual functional capacity.

**2.    The vocational evidence relied on satisfied the
        Commissioners burden of proof at the fifth step.**

In the Fifth Circuit the hypothetical questions to the
vocational expert must reasonably incorporate the disabilities
recognized by the ALJ, and the plaintiff or his representative must
be afforded an opportunity to correct deficiencies in the
hypothetical questions by mentioning or suggesting to the expert
any purported defects in the hypothetical questions, including
additional disabilities not recognized by the ALJ's findings and
disabilities recognized but omitted from the question.  If the
plaintiff or his representative are not given the opportunity to

_____

[20] On evaluating obesity in assessing an individual's RFC, SSR
02-01p states:
> Obesity can cause limitation of function.  The functions
> likely to be limited depend on may factors, including
> where the excess weight is carried.  An individual may
> have limitations in any of the exertional functions such
> as sitting, standing, walking, lifting, carrying,
> pushing, and pulling.  It may also affect ability to do
> postural functions, such as climbing, balance, stooping,
> and crouching.  The ability to manipulate may be affected
> by the presence of adipose(fatty)tissue in the hands and
> fingers.  The ability to tolerate extreme heat, humidity,
> or hazards may also be affected.

15

correct the deficiencies in the questions, a determination of non-disability based on this defective question cannot stand and must be reversed. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994); *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir.1988).

Contrary to the plaintiff's arguments, at the fifth step the ALJ correctly applied these legal standards. Plaintiff argued that it was error for the ALJ to rely on the expert's response to a hypothetical question that did not include consideration of his obesity, diabetes and sleep apnea. However, the plaintiff did not testify that these impairments caused him any work-related limitations, and there was no objective evidence in the record to support any such limitations. Therefore, it was not error for the ALJ to omit them from his question to the vocational expert.

The record demonstrates that the plaintiff's representative was given a full opportunity to question the expert and to correct any deficiencies he found in the ALJ's inquiry. AR pp. 1015-17. The ALJ properly obtained evidence from the vocational expert by presenting a question that included the plaintiff's age, education and vocational background and an RFC that was supported by the record.[21] The expert responded by identifying several occupations

---

[21] The ALJ analyzed all the evidence relevant to the RFC finding in his written decision, and explained his reasons for weighing the evidence and opinions contained in the record. AR pp. 870-75. It is the role of the ALJ to decide credibility, weigh the evidence and resolve conflicts in the evidence. The ALJ's findings must be upheld if supported by substantial evidence. *Greeenspan,*
(continued...)

16

Case 3:11-cv-00126-SCR   Document 18   01/29/13   Page 16 of 20

that exist in significant numbers in the national economy -
dishwashers, cleaners, grounds maintenance and food preparation
worker. This vocational testimony constitutes substantial evidence
to support the ALJ's finding that the plaintiff was able to perform
other work.[22]

_____

[21](...continued)
38 F.3d at 240.

    After reviewing all the evidence, the ALJ concluded that if
the plaintiff did not abuse substances, he could perform work at
all exertional levels, but still had the following nonexertional
limitations: "able to understand, remember and carry out simple,
one or two-step instructions; make simple work-related decisions;
deal with only occasional changes with work processes or
environment; have only incidental contact with the general public;
and perform jobs that do not require him to work with or in close
proximity to non-supervisory co-workers." AR p. 872. This RFC
finding is supported by substantial evidence - the hearing
testimony of Dr. Fain and the consultative psychological
examination of Alan Taylor, Ph.D. conducted on June 9, 2008. Based
on Dr. Fain's testimony and the inconsistencies and exaggerations
noted in Taylor's report, the ALJ found that overall the report
underestimated the plaintiff's functional capacity. Therefore, the
ALJ discounted the marked limitations noted in the report. AR
pp.872-74, 947-55, 993-1013.

    [22] It is well-established that the Commissioner may rely
exclusively on the medical-vocational guidelines only if the
guidelines evidentiary underpinnings coincide exactly with the
evidence of disability appearing in the record. *Bowling*, 36 F.3d
at 435; *Fields v. Bowen*, 805 F.2d 1168, 1170-71 (5th Cir.
1986)(guidelines cannot be used when claimant suffers solely from
nonexertional impairments); *Scott v. Shalala*, 30 F.3d 33, 34-35
(5th Cir. 1994). The primary reason for reversing the
Commissioner's first denial of the plaintiff's claim, was the lack
of vocational expert evidence necessary to satisfy the
Commissioner's burden at the fifth step. AR pp. 900-03. The
record demonstrates that on remand the Commissioner corrected this
error.

Case 3:11-cv-00126-SCR   Document 18   01/29/13   Page 17 of 20

3. **The *Singletary* analysis was sufficient and this finding as well as the finding that the plaintiff's drug and alcohol abuse was a contributing factor material to his disability, was supported by substantial evidence.**

Plaintiff acknowledged that the Appeals Council considered and analyzed his claim in light of *Singletary v. Bowen*, but maintained that the analysis was inadequate and the finding lacked substantial evidence. This argument is not supported by the record.

First, the opinion in *Singletary* indicates that the claimant did have a history of periodic alcohol and drug abuse. *Singletary*, 798 F.2d at 823. However, *Singletary* was decided prior to the 1996 changes in the law, which now require the Commissioner to determine whether drug or alcohol addictions are contributing factors material to the determination of disability. The changes place the burden on the claimant to prove that drug or alcohol addiction is not a contributing factor material to his disability. Therefore, it was not legal error for the Appeals Council to consider the principles of *Singletary* along with the law and regulations applicable to alcoholism and drug addiction. AR p. 854.

Second, accepting that the Appeals Council's analysis was not extensive,[23] it is still apparent from the decision that the Appeals

---

[23] To the extent the Appeals Council did not engage in a more extensive analysis, it is harmless error. The correct legal standards were applied and the finding was supported by substantial evidence. "Procedural perfection in administrative proceedings is not required" so long as "the substantial rights of a party have

(continued...)

18

Council accurately applied the principles of the case. The Appeals Council noted the evidence showed that the plaintiff had many jobs for short periods of time and admissions for mental health treatment during the relevant time period, but essentially found that this was not merely the result of the plaintiff's mental illness/impairments - substance abuse was a material contributing factor. In other words the evidence showed that but for substance abuse the plaintiff would not have been admitted so many times for mental health treatment and would have been able to maintain employment.

This conclusion is supported by substantial evidence. As testified to by Dr. Fain and shown by the mental health records going back to 1998, virtually all of the treatment records and each of the plaintiff's hospitalizations for mental illness/treatment noted the interrelationship of the plaintiff's substance abuse with his mental impairments. Notably, when the plaintiff was not abusing substances during his incarceration from June 2006 to April 2008, the treatment records contained little or no evidence of the mental symptoms and limitations that the plaintiff experienced in his previous hospitalizations/treatment of his mental impairments.[24]

---

[23](...continued)
not been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988); *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

[24] The ALJ noted in his decision that there was no evidence to suggest that the plaintiff had a source for alcohol or drugs during
(continued...)

Case 3:11-cv-00126-SCR   Document 18   01/29/13   Page 19 of 20

AR pp. 935-48, 996-97, 1006-07.  The record contains more than substantial evidence to support the finding that the substance abuse contributed to the hospitalizations and inability to remain employed.  AR pp. 128-56, 158-239, 247-685, 719-777, 994-1002. This same evidence is also more than sufficient to support the conclusion that the plaintiff was not disabled because drug and alcohol addiction were contributing factors material to the determination of disability.

## Conclusion

Accordingly, under sentence four of 42 U.S.C. §405(g), the final determination of the Commissioner of Social Security Michael J. Astrue, that plaintiff Adrian D. Douglas is not disabled and denying his applications for disability and supplemental security income benefits, is affirmed.  A judgment shall be entered dismissing this action.

Baton Rouge, Louisiana, January 29, 2013.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

---

[24](...continued)
this period of incarceration.  AR p. 871.